UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert HAWKINS, Defendant-Appellant.

No. 81–5136.

United States Court of Appeals,
Eleventh Circuit.

Aug. 2, 1982.

---

Richard Hersch, Miami, Fla., for defendant-appellant.

John M. Owens, Farris R. Bond, Dept. of Justice, Juan C. Marrero, Miami, Fla., for plaintiff-appellee.

Before WISDOM *, RONEY and HATCHETT, Circuit Judges.

RONEY, Circuit Judge:

Alleging trial errors and failure to suppress evidence, Defendant Robert Hawkins appeals from his conviction for conspiring to participate in racketeering activity in violation of 18 U.S.C.A. § 1962(d), participation in racketeering activity in violation of 18 U.S.C.A. § 1962(c), and possession of heroin with intent to distribute in violation of 21 U.S.C.A. § 841(a)(1). Tried with eight other defendants charged in this RICO conspiracy involving robbery and narcotics trafficking, only Hawkins was convicted. We affirm.

---

* Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designa-

Defendant contends the district court erred in denying his motion to suppress heroin seized from a suitcase by the Dade County Public Safety Department. The following events ·set the stage for the search of the suitcase. While standing in a parking area outside the Miami airport baggage claim, Hawkins was questioned by a law enforcement officer. As a woman accompanied by a porter carrying a suitcase approached, Hawkins made hand signals in her direction. She picked up the suitcase and began to walk away but stopped and dropped the suitcase when a second law enforcement officer identified himself to her. Meanwhile Hawkins had become disruptive to the point of disorderly conduct and yelled that it was not his suitcase and to get that woman away from him. Both Hawkins and the woman were taken into custody. While in custody, Hawkins continued to disclaim any knowledge of the woman or the suitcase. A warrantless search of the suitcase revealed the heroin sought to be suppressed. At the suppression hearing held at trial, however, Hawkins testified out of the jury's presence that he owned the suitcase and the heroin, contrary to his assertion at the time of the search, and that he expected the suitcase to be a private repository for the drugs.

This case is a bit unusual in that at the time of the search defendant denied an interest in either the suitcase or its contents while at the suppression hearing he testified he owned both and asserted a privacy interest in both. The question has been raised as to when the defendant must demonstrate "standing" to question the search, although a correct analysis will show that a focus on "standing" is not now the proper approach to the ultimate question. After *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the proper analysis proceeds directly to the substance of a defendant's Fourth Amendment claim to determine whether the defendant had a rea-

tion.

sonable and legitimate expectation of privacy in the article at the time of the search and consequently, whether the Fourth Amendment has been violated. To make this determination, we must view in totality the circumstances surrounding the event, including the preliminary statements of ownership asserted by Hawkins at the motion to suppress hearing. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980); *Rakas*, 439 U.S. 128, 150–52, 99 S.Ct. at 434–35 (Powell, J., concurring). In this regard, an analysis of the Fourth Amendment case law may be helpful.

■ The law has developed through a number of recent decisions. At one time the mere criminal charge of possession against Hawkins would have given him automatic standing to suppress the fruits of an illegal search. *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). That automatic standing doctrine has now been abolished. *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). A claim of ownership alone is no longer sufficient to gain suppression. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). The recent Supreme Court decisions have recast the requirements for successfully asserting a Fourth Amendment claim. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court described the standing analysis as artificial and concluded "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." *Id.* at 139, 99 S.Ct. at 428. Because Fourth Amendment rights are personal and may not be vicariously asserted, *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Alderman v. United States*, 394 U.S. 165, 89 S.Ct. 961, 22

L.Ed.2d 176 (1969), the Court then phrased the question as "whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it." 439 U.S. at 140, 99 S.Ct. at 428. The relevant inquiry has thus become the defendant's legitimate expectation of privacy, a phrase derived from the language of *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967).

For example, in *United States v. Arce*, 633 F.2d 689 (5th Cir. 1980), *cert. denied*, 451 U.S. 972, 101 S.Ct. 2051, 68 L.Ed.2d 351 (1981),[1] the defendants were convicted of charges stemming from the possession of stolen mail found in the glove compartment of a car. The defendant driver of the car was found to have "standing but another defendant was denied 'standing' to contest the search since he had no legitimate expectation of privacy in a car registered to someone else when he was not even a passenger in it when arrested." *Id.* at 694.

· This Court has ruled that disclaiming ownership or knowledge of an item ends a legitimate expectation of privacy in that item. In *United States v. Colbert*, 474 F.2d 174 (5th Cir. 1973) (en banc), defendants were found to have no reasonable expectation of privacy in briefcases they had been carrying when they disclaimed any interest in the briefcases and began to walk away from them. *Id.* at 177. Similarly, in *United States v. Canady*, 615 F.2d 694 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980), repeated disclaimers of ownership of a suitcase were held to preclude any legitimate expectation of privacy in the suitcase or its contents. *Id.* at 697. Suppression was denied in *United States v. Pirolli*, 673 F.2d 1200 (11th Cir. 1982) when defendant disavowed any knowledge of bags later found to contain cocaine. A like result was reached in *United States v. Bush*, 623 F.2d 388 (5th Cir. 1980). In that

---

**1.** The Eleventh Circuit, in the en banc decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the deci-

sions of the former Fifth Circuit decided prior to October 1, 1981.

case the defendant threw a bag of cocaine on the ground and ran when addressed by a DEA agent. These cases support a denial of the suppression motion because Hawkins had disclaimed an interest on which to base a claim that he had an expectation of privacy at the time of the search.

Defendant relies on *Walter v. United States*, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), in arguing that a failure to acknowledge ownership of the suitcase at an airport does not constitute voluntary abandonment where criminal prosecution is likely. In that case, defendants were indicted on federal obscenity charges after a shipment of sealed packages of film was mistakenly delivered to a third party. *Walter* does not go as far as defendant would have it. The footnote relied on by defendant concerned the failure to claim boxes *after* they had come into possession of the Government. 447 U.S. at 658 n.11, 100 S.Ct. at 2402 n.11. The outside of the packages indicated they contained obscene material. Aside from that difference, however, Hawkins' case involves an affirmative disavowal of ownership rather than a passive failure to claim incriminating evidence. Although on the basis of these facts we hold Hawkins' actions and statements to the officers at the time of the investigation reveal a lack of a reasonable expectation of privacy in the suitcase, we do not mean to express by our ruling that a defendant must necessarily claim a property interest in the article at the time of the search, or that every type of statement disclaiming ownership of an article forecloses the establishment of a reasonable expectation of privacy therein. Because an assertion of ownership is not, by itself, dispositive of the right to claim the protection of the fourth amendment, it follows that a disclaimer of ownership, while indeed strong indication that a defendant does not expect the article to be free from government intrusion, is not necessarily the hallmark for deciding the substance of a fourth amendment claim. Hawkins' unsolicited and violent protests that he knew nothing about the woman or

the suitcase are so inconsistent with a claim of privacy interest in the suitcase that he cannot later successfully assert that claim.

■ Contrary to the defendant's argument, there was no error in admitting evidence of a murder because the indictment includes murder as one of the offenses in the pattern of defendants' racketeering activity. *See United States v. Elliott*, 571 F.2d 880, 911 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Both the substantive and the conspiracy RICO counts mentioned murder and threat of murder as part of the activity of the organization even though the indictment did not charge murder. There was a sufficient link to the racketeering activity so that the admission of murder evidence was not an abuse of discretion.

The allegedly improper comments on defendant's failure to testify either do not refer to defendant at all or do not refer to defendant's failure to take the stand. A review of the record indicates that the jury would not have considered the remarks in such a way as to violate defendant's constitutional right against self-incrimination.

■ Defendant's objections to witnesses' remarks as impermissible references to his criminal record are based on a strained interpretation of the testimony. Two of the statements complained of did not refer to defendant, one was directed at all of the defendants and cured by an instruction to disregard it, and one was not objected to at trial. Viewed in the context of the entire lengthy trial, none of these comments was so prejudicial as to render the proceedings fundamentally unfair and deny due process. *See United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1398, 67 L.Ed.2d 369 (1981).

■ Contrary to defendant's claim of entitlement to a judgment of acquittal, the evidence was sufficient to support his conviction for possession of heroin with intent to distribute. Examined in the light most

favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the evidence showed the following facts. The defendant was at the airport when the heroin courier arrived. He acted in a surreptitious manner when first seeing her. After signalling to her, defendant left the terminal, walked to a car, and opened its trunk. He peered into the baggage area of the terminal where the courier was waiting for the suitcase. When questioned by a law enforcement officer, defendant gave evasive and contradictory answers as to his reason for being at the airport. When the courier approached him, defendant began making underhanded waving motions in her direction. The manner in which defendant attempted to disassociate himself from the courier and the suitcase could be seen by the jury in retrospect as evidence that she and he were associated in the possession of the suitcase and the heroin therein.

For the reasons set forth above, we affirm defendant's conviction.

AFFIRMED.