[No. A030700. First Dist., Div. Four. May 5, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS STANISLAWSKI, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

750

## COUNSEL

William K. Maas, Jr., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert Granucci, Joyce E. Hee, and Alexandra E. Ramsburg, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Defendant Nicholas Stanislawski (appellant) appeals from a conviction for cultivation of marijuana (Health and Saf. Code,[1] § 11358) entered upon a plea of nolo contendere.

On July 19, 1983, Mitchell J. Brown, a special agent assigned to the Bureau of Narcotic Enforcement, was conducting an aerial observation class instructing students how to spot marijuana plants from the air. The lowest altitude to which the plane descended was about 3,000 feet above sea level and the aerial observations were made with the naked eye. While flying over part of Napa County, Officer Brown sighted 80 to 90 marijuana gardens grown on a hillside near Dry Creek Road. Brown contacted Mike Smith, a detective from Sonoma County, who in turn called Deputy Sheriff Lynn Harmston of the Napa Special Investigations Bureau.

Shortly thereafter, Detective Smith met with Officer Harmston, showed him the aerial photos taken from the plane and also described the area to

---

[1]Unless otherwise indicated, all statutory references are to the Health and Safety Code.

him. Officer Harmston who had been to the area on many occasions in the past and who had visited appellant's residence as recently as two months ago, recognized appellant's house from the aerial photographs. Following this meeting the two officers made a concerted effort to determine who owned the property where the marijuana gardens were sighted. They went to the county assessor's office to look up the parcel maps and compare them to the aerial photos taken.

Thereafter, on July 20, 1983, Deputy Sheriff Harmston sought a warrant authorizing the search of appellant's residence, land and outbuildings located at 6214 Dry Creek Road. In his affidavit, which was accompanied by the aerial photographs and the county assessor's parcel map, Officer Harmston expressed his opinion that the marijuana plants sighted from the plane were located on appellant's property. The officer's conclusion was bolstered, inter alia, by the fact that the marijuana plants in dispute were spotted on the hillside, not far from appellant's house; that there were no other houses in the vicinity of the gardens; and that there were several paths leading from appellant's residence to the hillside gardens.

The search warrant issued by the magistrate was executed by two groups of narcotic agents on July 21, 1983. The first group headed by Officer Harmston searched appellant's residence and outbuildings. The search of the residence yielded the following items: a triple balance scale, a pistol, ammunition, five or six handguns and rifles, a baggie containing marijuana and three Realistic portable radios. In the course of the outside area search, the officers discovered 22 marijuana plants growing in a small garden. In the shed the officers found kerosene heaters, mousetraps, 15-20 solar panels and also loose, dry marijuana. At the end of the house there were two long, rolled up drip irrigation hoses.[2]

The other group led by Officer Dern searched the hillside area. At the campsite they discovered solar panels and rodent traps that were similar to the ones found at the residence. The plastic irrigation piping laid out at the hillside was a part of the irrigation system found in the house. In addition, the officers observed two tents at the hill area campsite. The larger one served as living quarters containing propane, stove, refrigerator and food supplies; the smaller one as sleeping quarters with sleeping bags and personal clothing in it. In the smaller tent the officers discovered and seized two Realistic portable (walkie-talkie) radios. A brief test conducted by the officers demonstrated that people in the residence and the tent could com-

---

[2]Officer Harmston testified that the above items described were indicative of cultivation and sale of marijuana. For example, the scale found was the type often used to weigh marijuana for packaging and sale, the heaters were being used to speed the drying process of marijuana, and the weapons were kept by the cultivators for security reasons.

municate with each other because the portable walkie-talkie radios were set on the same channel.

Officer Harmston opined that the 22 marijuana plants found in the small garden near appellant's house would yield a minimum of 20 pounds of marijuana which was inconsistent for personal use. Premised upon this estimate, the officer concluded that the plants from the small garden were possessed for sale rather than personal use.

Based upon the above facts appellant was charged with cultivation of marijuana (§ 11358; count one), possession of marijuana for sale (§ 11359; count two), and possession of a destructive device (Pen. Code, § 12303; count three). Appellant moved to set aside the information (Pen. Code, § 995) and to suppress evidence (Pen. Code, § 1538.5), both of which were denied. Thereafter appellant pled nolo contendere to count one and in return the two other charges were dismissed. Following a sentencing hearing appellant was granted probation on certain conditions.

On appeal appellant contends that his conviction should be reversed because (1) the random aerial surveillance over his residence and the neighboring hillside violated his Fourth Amendment rights; (2) the search of the campsite and seizure of evidence thereon were unlawful; and (3) the affidavit in support of the search warrant was fatally defective inasmuch as it contained false statements and material omissions. We find no merit to any of these contentions and affirm the judgment.

## I. *Aerial Surveillance*

■ Appellant first contends that the aerial surveillance, upon which the warrant authorizing the search of his property rested, violated his reasonable expectation of privacy protected by the Fourth Amendment and thus was unlawful. We disagree.

Under well settled law the touchstone of the Fourth Amendment analysis is whether a person has a constitutionally protected reasonable expectation of privacy. (*Katz* v. *United States* (1967) 389 U.S. 347, 360 [19 L.Ed.2d 576, 587, 88 S.Ct. 507].) Although the reasonable expectation of privacy is not earthbound and may ascend also into the airspace, it is well established that the amendment does not protect merely subjective expectation of privacy. ■ As noted by the Supreme Court in *Smith* v. *Maryland* (1979)

442 U.S. 735 [61 L.Ed.2d 220, 99 S.Ct. 2577], the determination of whether a defendant has a legitimate expectation of privacy involves two distinct inquiries. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy (i.e., whether the individual has shown that "he seeks to preserve (something) as private." (*Katz* v. *United States, supra,* at p. 351 [19 L.Ed.2d at p. 582].) The second inquiry is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable (i.e., whether the individual's expectation, viewed objectively, is justifiable under the circumstances). (442 U.S. at p. 740 [61 L.Ed.2d at pp. 226-227]; see also *United States* v. *Mackey* (9th Cir. 1980) 626 F.2d 684, 687, fn. 4.)

In consonance with the above principles, in *Oliver* v. *United States* (1984) 466 U.S. 170 [80 L.Ed.2d 214, 104 S.Ct. 1735], the United States Supreme Court has reaffirmed that while "the so-called curtilage" (i.e., the land immediately surrounding and associated with the home) is constitutionally protected against unreasonable searches, the special safeguard accorded by the Fourth Amendment is not extended to the open fields. (*Hester* v. *United States* (1924) 265 U.S. 57, 59 [68 L.Ed. 898, 900, 44 S.Ct. 445].) This is so because "open fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. *There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open fields.* Moreover, as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be. . . . [T]he public and police lawfully may survey lands from the air. For these reasons, *the asserted expectation of privacy in open fields is not an expectation that 'society recognizes as reasonable.'*" (*Oliver* v. *United States, supra,* 466 U.S. at p. 179 [80 L.Ed.2d at pp. 224-225], fns. omitted, italics added.)

The California law is in accord with the federal rule concerning the legality of aerial surveillance of open fields. (*People* v. *Messervy* (1985) 175 Cal.App.3d 243 [221 Cal.Rptr. 10]; *People* v. *Egan* (1983) 141 Cal.App.3d 798 [190 Cal.Rptr. 546]; *Tuttle* v. *Superior Court* (1981) 120 Cal.App.3d 320 [174 Cal.Rptr. 576]; *People* v. *Joubert* (1981) 118 Cal.App.3d 637 [173 Cal.Rptr. 428]; *Burkholder* v. *Superior Court* (1979) 96 Cal.App.3d 421 [158 Cal.Rptr. 86], etc.) As summarized in *People* v. *St. Amour* (1980) 104 Cal.App.3d 886 [163 Cal.Rptr. 186], a closely analogous case: "The Fourth Amendment privilege may ascend also into the airspace. It is fundamental that in order to be immune from air surveillances or overflights, the person controlling the land must exhibit not merely a subjective desire, but rather an objective, reasonable expectation of privacy with respect to the airspace in question. However, the owner or other lawful user of land

cannot invoke the constitutional protection against an air intrusion by a mere showing that he took unmistakable measures to protect his land from earthly encroachments. The case law makes it clear that a subjective desire to hide the contraband from aerial surveillance is not sufficient to establish the requisite reasonable expectation of privacy. On the contrary, in order to be constitutionally protected from overflights, the person must show that the land in question is expected to be private according to the common habits of persons engaged in agriculture." (At p. 892.)

 The aerial surveillance at bench falls within the above rule and does not amount to a search in the constitutional sense. For, the overflight in dispute took place in sparsely populated rural areas of Napa County; the marijuana gardens grown by appellant were spotted in the open field and were clearly visible with the naked eye by the officers who made a random overflight in the area as a part of police training. Under these circumstances appellant could not entertain a reasonable expectation that the marijuana field will remain free from warrantless inspection by government officers because, as our Supreme Court has recently remarked, no one has a *reasonable* expectation of privacy in the conduct of criminal affairs. (*People v. Cook* (1985) 41 Cal.3d 373, 384 [221 Cal.Rptr. 499, 710 P.2d 299].)

Appellant's argument that the aerial overflight in this case should be deemed unlawful because it embraced not only the open field where the marijuana was located, but also the "curtilage" of his residence which is constitutionally protected (*Oliver* v. *United States, supra,* 466 U.S. at p. 180 [80 L.Ed.2d at p. 225]) cannot be accepted for at least two cogent reasons. One, the record demonstrates that the warrant authorizing the search of appellant's residence was based upon the observation of the marijuana plants in the hillside area which was outside the "curtilage" and that the small marijuana garden in appellant's yard was discovered only later during the warrant-authorized search of appellant's property. This, of course, clearly shows that the observation of the "curtilage" did not furnish incriminating evidence and, thus, did not contribute to the issuance of the search warrant, the legality of which is questioned. Two, the very issue raised by appellant was presented and rejected by *United States* v. *Bassford* (D.Me. 1985) 601 F.Supp. 1324, the court stating at page 1331: "Although a warrantless search of a home or its curtilage *effected by means of a physical intrusion into the curtilage* violates the fourth amendment absent exigent circumstances [citation], observation of areas within the curtilage from ground locations outside the curtilage are generally permissible, absent use by the occupant of measures to prevent such observations. [Citations.] Under the same reasoning and assuming that aerial surveillance of the particular

place is lawful, *there would appear to be no sound basis for distinguishing between 'curtilage' and 'noncurtilage' areas equally visible from the air. In most cases it would be impracticable to view one without contemporaneously viewing the other.*" (Italics partially added.)

■ We observe in passing that *People* v. *Cook, supra,* 41 Cal.3d 373, a recent California Supreme Court case holding aerial surveillance unconstitutional, is readily distinguishable from the present instance. In *Cook,* the aerial surveillance was not a random overflight in rural areas, but was specifically directed at appellant's enclosed backyard as a result of which a marijuana cultivation reported by an anonymous informer was confirmed. In contradistinction to the present case, the aerial intrusion in *Cook* was aimed at the "curtilage" which enjoys constitutional protection under both federal and state Constitutions. Hence, what was said in *People* v. *Ciraolo* (1984) 161 Cal.App.3d 1081, 1089 [208 Cal.Rptr. 93] (cert. granted in part by *California* v. *Ciraolo* (1985) 471 U.S. 1134 [86 L.Ed.2d 691, 105 S.Ct. 2672]), is equally applicable here: "From the perspective of defendant's reasonable expectation of privacy we deem it significant that the aerial surveillance of his backyard was not the result of a routine patrol conducted for any other legitimate law enforcement or public safety objective, but was undertaken for the specific purpose of observing this particular enclosure within defendant's curtilage." ■ Furthermore, *Cook* was a pre-Proposition 8 case and thus decided under article I, section 13, of the California Constitution; the crime here involved was committed well after June 8, 1982, the effective date of Proposition 8 (Cal. Const. art. I, § 28); therefore, appellant's motion to suppress evidence is subject to the federal exclusionary rule (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744]) as defined in the federal case law (*Hester* v. *United States, supra,* 265 U.S. 57, 59 [68 L.Ed. 898, 900]; *Oliver* v. *United States, supra,* 466 U.S. 170, 178-179 [80 L.Ed.2d 214, 224], etc.).

## II. *Legality of the Campsite Search*

■ Appellant next contends that the search of the hillside camp and the tents was unlawful and that the numerous items seized as a result of the search (especially the walkie-talkie radios which established a communication link between the house and the campsite) should have been excluded.

It is undisputed that the marijuana gardens and the tents in question were located on property belonging to appellant's neighbor, Sarcander. It is likewise undisputed that appellant disclaimed any possessory or proprietary interest in both the hillside camp and the property seized, including the walkie-talkie radios. Based upon this uncontested record appellant's con-

tention must be rejected since he lacks that reasonable and legitimate expectating privacy necessary to raise the issue.

Since this case is governed by federal law (*In re Lance W., supra*, 37 Cal.3d 873, 886-887), which fails to recognize the so-called "vicarious exclusionary rule" and holds instead that "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted" (*Alderman* v. *United States* (1969) 394 U.S. 165, 174 [22 L.Ed.2d 176, 187, 89 S.Ct. 961]), appellant cannot complain—an illegal search violates only the rights of those who have "a legitimate expectation of privacy in the invaded place." (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 143 [58 L.Ed.2d 387, 401, 99 S.Ct. 421].) Appellant has disclaimed any proprietary or possessory interest in both the campsite and the evidentiary items seized. It is settled law that a disclaimer of proprietary or possessory interest in the area searched or the evidence discovered terminates the legitimate expectation of privacy over such area or items. (*United States* v. *Hawkins* (11th Cir. 1982) 681 F.2d 1343, 1345.) It follows that here appellant has fallen short of establishing the requisite expectation in order to challenge the legality of the campsite search.

Appellant's insistence that his legitimate expectation of privacy over the campsite and the tent was established because "a defendant who enters into an arrangement that indicates joint control and supervision of the place searched, may challenge a search of the place where contraband is concealed" (*United States* v. *Pollock* (9th Cir. 1984) 726 F.2d 1456, 1465) is devoid of merit. While appellant was charged with joint control, no evidence was introduced that appellant, in fact, exerted such joint control or had a joint arrangement concerning the cultivation of the hillside crop. In the absence of such evidence, appellant failed to sustain his burden of showing a reasonable expectation of privacy in the campsite area. (*Ibid.*) Appellant's alternative assertion that he should not have been forced to give up his Fifth Amendment privilege against self-incrimination in order to assert his right under the Fourth Amendment aids him not. For, in *Simmons* v. *United States* (1968) 390 U.S. 377, 394 [19 L.Ed.2d 1247, 1259, 88 S.Ct. 967], the United States Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt. . . ." Therefore, appellant certainly could have asserted (by testifying) his Fourth Amendment rights with respect to the hillside campsite without waiving his privilege against self-incrimination.

Since we conclude that appellant cannot challenge the legality of the campsite search, the additional issues regarding the details of the search of the tent and the nature of the items seized need not be addressed.

### III. *Sufficiency of Search Warrant Affidavit**

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Channell, J., and Sabraw, J., concurred.

---

*See footnote, *ante*, page 748.