[No. D006598. Fourth Dist., Div. One. Jan. 10, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS EDWARD DASILVA, Defendant and Appellant.

**COUNSEL**

Robert Wayne Gehring, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Leslie B. Fleming, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, J.—Following denial of a motion to suppress evidence (Pen. Code, § 1538.5), Thomas Edward Dasilva entered a negotiated plea of guilty to possessing methamphetamine for sale. (Health & Saf. Code, § 11378). The court sentenced him to serve the middle term of two years in prison. Dasilva appeals.

At approximately 12:30 a.m. on April 10, 1986, El Cajon Police Officer Michael Hook stopped Dasilva for a defective taillight. Dasilva identified himself as James Cain and could not produce a driver's license or vehicle registration for the car he was driving. The car had Oregon license plates. Dasilva told the officer a friend had loaned him the car to drive to San Diego. When Hook ran a records check on the name given by Dasilva and on the automobile, he learned the car was registered to a business and received a negative response to the name James Cain. Hook told Dasilva he was suspicious whether Dasilva was giving correct information and obtained permission to search the interior of the car. After finding no registration or other information, Hook asked if he could look through Dasilva's wallet for identification. Dasilva denied permission but went through the wallet himself, taking out papers, looking at them and placing them on the car hood. None supported Dasilva's statement his name was James Cain. During this process, Dasilva looked at one piece of paper, crumbled it into a ball and put it behind his back. Hook ordered Dasilva to put the paper on the car hood. When he did not comply, Hook grabbed Dasilva's hand, pulled it to the hood of the car and told Dasilva to drop the paper. He did so. The paper was an invoice from "R.J.M."

Dasilva then became apologetic, telling Hook he had given an erroneous name and ultimately admitted his name was Dasilva. Hook arrested him for giving a false name and, after checking with the marshal's office, learned he had two outstanding warrants. Hook advised Dasilva he was still suspicious about ownership of the vehicle and asked to search the trunk. Dasilva told the officer he could look in the trunk but the only thing there that was his was a guitar case. Upon opening the trunk, Hook found a guitar case, a TWA bag and a small cardboard box. When Hook asked if Dasilva had any objection to his searching the items, Dasilva stated the only thing that was his was the guitar case and he did not know anything about the other items in the trunk. Hook searched the items.

He found no contraband in the guitar case but found an unloaded revolver, bottles of chemicals, and controlled substance paraphernalia in a suitcase; methamphetamine in bindles in a cardboard box; and another gun and more paraphernalia and liquid in a tote bag.

In opposition to the motion to suppress, the prosecution argued Dasilva consented to the search and the search was a lawful attempt to obtain information concerning ownership of the vehicle.

In denying the motion to suppress, the trial court stated: "Defendant lacks standing to object to the search of the containers in the trunk, by virtue of his disclaimer at the scene. He may not regain standing by reversing his position now. The defendant has standing with respect to the car, but consented to access to the trunk. The consent was not coerced. The detention was lawful and was not unduly prolonged, given the circumstances. The subsequent arrest was likewise lawful."

Dasilva contends the trial court erred in denying the motion because of lack of standing and in finding he voluntarily consented to the search and detention was not of unlawful duration.

I

■ At the outset, Dasilva argues the trial court erred in basing its denial of the motion to suppress on lack of standing, a ground not argued by the prosecution. Dasilva's argument is based in part on the principle expressed in *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 540, 542 [102 Cal.Rptr. 729, 498 P.2d 977]. *Mestas* held the prosecution cannot raise an argument on appeal in support of an otherwise erroneous trial court ruling, if the argument is not supported by evidence produced in the trial court. It is inapposite here since lack of standing is supported by the testimony reported in the preliminary hearing transcript.

Citing *United States* v. *Santana* (1976) 427 U.S. 38, 41 [49 L.Ed.2d 300, 304, 96 S.Ct. 2406], and *Steagald* v. *United States* (1981) 451 U.S. 204, 209 [68 L.Ed.2d 38, 43-44, 101 S.Ct. 1642], and a line of California cases consistent with *Santana* and *Steagald,* Dasilva argues the prosecution must object to standing in the trial court in order to raise the issue on appeal. In *Santana,* the Supreme Court merely mentioned in a footnote it would not consider the standing issue because it had not been raised below. Similarly, in *Steagald,* the Supreme Court held the government was precluded from raising lack of standing for the first time on appeal when it had not been raised below. Here, the court below raised the issue of standing in its tentative ruling and the parties chose not to argue the issue after the court raised it. Dasilva notes the principle expressed in *Steagald, Santana* and the California cases is "merely an application of the doctrine that objections not made or theories not argued at trial cannot be raised for the first time on appeal." However, when the reason behind this principle is analyzed, its inapplicability here is clear. Raising an issue for the first time on appeal is

precluded because the opposition has been denied the opportunity to make a record on the matter and cure the defect at trial. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 766 [248 Cal.Rptr. 126, 755 P.2d 310].) " 'Because of [his] failure to make a timely and specific objection . . . the point must be deemed waived.' " (*Id.* at pp. 766-767, quoting *People* v. *Green* (1980) 27 Cal.3d 1, 22 [164 Cal.Rptr. 1, 609 P.2d 468].) Here, once the court issued the tentative ruling, Dasilva had the opportunity to make a record on the standing issue. He chose not to do so. He was not denied an opportunity to make a record or cure a defect below.

■■■■■■ Generally, evidence obtained in a warrantless search shall be excluded only if one having a legitimate expectation of privacy in the area searched shows deprivation of Fourth Amendment rights. (*Rakas* v. *Illinois* (1978) 439 U.S. 128, 143, 148 [58 L.Ed.2d 387, 401, 404, 99 S.Ct. 421].) "It is settled law that a disclaimer of proprietary or possessory interest in the area searched or the evidence discovered terminates the legitimate expectation of privacy over such area or items." (*People* v. *Stanislawski* (1986) 180 Cal.App.3d 748, 757 [225 Cal.Rptr. 770], citing *United States* v. *Hawkins* (11th Cir. 1982) 681 F.2d 1343, 1345.) In *Stanislawski,* officers engaged in an aerial search and discovered marijuana gardens near defendant's home. As a result, they obtained a search warrant of Stanislawski's residence. Near the growing marijuana, the officers discovered a campsite with solar equipment, rodent traps and piping of the same kind found at Stanislawski's home. The court concluded because the property upon which the campsite was based belonged to another and Stanislawski disclaimed any interest in the campsite, he lacked standing to challenge the search. The court based its ruling on *United States* v. *Hawkins.* In *Hawkins,* a defendant in an airport baggage area disclaimed ownership or possession of a suitcase containing heroin. The court, citing a series of federal cases, applied the principle relied upon in *Stanislawski.*

Dasilva challenges *Stanislawski* by arguing the court there erred in relying upon *Hawkins* for a principle. *Hawkins* qualified by saying not every disclaimer of ownership forecloses a reasonable expectation of privacy in the property. However, the qualification does not detract from the principle for which *Stanislawski* relied upon *Hawkins.* Had Dasilva told Officer Hook he did not own the bags in the trunk but was using them, he might have retained an expectation of privacy over the bags, while disclaiming ownership. He did not do so.

In opposition to the principle expressed in *Stanislawski,* Dasilva cites a series of federal cases holding when a defendant seeks to disclaim ownership or possession as a defense to the charges, he retains an expectation of privacy over the item searched when the government seeks to prove posses-

sion at trial. The cases are inapplicable here since they deal with the situation where a police officer concludes the subject property belongs to the defendant, searches it, and the People later defend a Fourth Amendment challenge on the ground the defendant disclaimed possession. (*United States* v. *Bagley* (9th Cir. 1985) 772 F.2d 482, 489, cert. den. 475 U.S. 1023 [89 L.Ed.2d 326, 106 S.Ct. 1215]; *United States* v. *Morales* (8th Cir. 1984) 737 F.2d 761, 763-764; also see *United States* v. *Veatch* (9th Cir. 1981) 674 F.2d 1217, 1220-1221 [where defendant's denial of property ownership deemed abandonment of privacy interest].) To the extent federal cases are inconsistent with *Hawkins* and *Stanislawski,* we choose to follow *Hawkins* and *Stanislawski.* We will not extend California law to permit a defendant who disclaims possession of an object to take a contrary position in an effort to attain standing to seek to exclude that object from evidence. We hold because Dasilva disclaimed ownership in the contents of the trunk other than the guitar case, he lacks standing to seek their exclusion from evidence.

## II

The prosecution and defense agree Dasilva had an expectation of privacy in the trunk of the car he was driving. However, the trial court found no unlawful search of the trunk because Dasilva voluntarily consented to the search. Dasilva argues because of the duration of the detention and the fact he consented while he was handcuffed in the police car, his consent was not voluntary.

Whether consent to search is voluntary is a factual issue for the trial court to determine in light of the circumstances. (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 221 [36 L.Ed.2d 854, 859, 93 S.Ct. 2041]; *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) Here, the trial court found Dasilva's consent was voluntary. This factual finding must be upheld if supported by substantial evidence when the evidence is viewed in a light most favorable to the judgment. (See *People* v. *Towler* (1982) 31 Cal.3d 105, 117-118 [181 Cal.Rptr. 391, 641 P.2d 1253].)

Here, the court's decision on the motion to suppress was based upon the transcript of the preliminary hearing which shows Dasilva consented to the search. Nothing in the preliminary hearing transcript supports the argument the consent was involuntary.

## III

Finally, Dasilva contends he was unlawfully detained after Officer Hook received negative reports in response to his radio inquiry whether the vehicle Dasilva was driving had been reported stolen and concerning the

name Dasilva initially gave. Dasilva recognizes the initial detention for a traffic violation was lawful, as was detention during the time it took to make the radio inquiry when he was unable to produce a driver's license or registration. Without citing authority, he concludes, once the officer received a negative response to his first radio inquiry, a reasonable officer's suspicion Dasilva was driving a stolen car would have been satisfied and further detention was based solely on Hook's hunch. We disagree.

■ There is no rigid time limitation imposed on a detention. The court must determine the purpose of the stop as well as the time reasonably needed to effectuate the purpose. (*United States* v. *Sharpe* (1985) 470 U.S. 675 [84 L.Ed.2d 605, 105 S.Ct. 1568].) The question is whether the police diligently pursued a means of investigation likely to confirm or dispel their suspicions quickly while the suspect was detained.

■ Here, the detention was not unduly prolonged. When a motorist who is stopped driving a vehicle licensed out-of-state can produce neither driver's license nor vehicle registration and tells the officer a friend loaned him the car which the officer subsequently learns is registered to a business, a reasonable officer will not be satisfied and terminate his inquiry merely because the car has not *yet* been *reported* stolen. Officer Hook reasonably asked to check the interior of the car, then the contents of Dasilva's wallet and ultimately the trunk in an effort to determine whether the car was stolen. Dasilva was detained approximately 20-25 minutes before the officer arrested him. During this period, the officer contacted Dasilva, sought a license and registration, radioed Oregon, obtained a response, checked the interior of the car for the registration, sought to inspect Dasilva's wallet for proof of identification and twice more radioed inquiries concerning two other identifications Dasilva gave. Not until the third radio call, with the first true name, did the officer receive information warrants had been issued on Dasilva.

The judgment is affirmed.

Kremer, P. J., and Wiener, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 19, 1989.