[No. A044836. First Dist., Div. Four. June 20, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
RANDY DEWAYNE DEES, Defendant and Appellant.

COUNSEL

Kathy M. Chavez, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Herbert F. Wilkinson and Joanne S. Abelson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ANDERSON, P. J.—Following denial of a motion to suppress evidence, defendant Randy DeWayne Dees (appellant) proceeded to trial on three drug-related offenses and one charge of possession of a concealable firearm by an ex-felon. A jury found him guilty of (1) possession of methamphetamine for sale; (2) unauthorized possession of a hypodermic needle or syringe; and (3) being under the influence of a controlled substance. It deadlocked on the firearm count, which the district attorney subsequently dismissed. The court found true the allegation of a prior drug conviction and sentenced appellant to five years in state prison (two years for count 1; concurrent six-month terms for counts 2 and 3; three-year consecutive sentence for the enhancement).

On appeal appellant contends the trial court erroneously concluded he did not have "standing" to pursue his suppression motion. We agree and reverse and remand.

## I. BACKGROUND; PRETRIAL PROCEEDINGS

### A. *Preliminary Hearing*

On the basis of the following facts adduced at the preliminary hearing, on July 8, 1988, appellant moved to suppress evidence seized during searches of a vehicle and residence and to dismiss all counts except count 3 (being under the influence of a controlled substance):

#### (1) *January 19, 1988, Arrest and Search*

On the afternoon of January 19, 1988, Contra Costa County Deputy Sheriff Frederick Gray received a radio call regarding a disturbance at 2460 Fordham in San Pablo. When he arrived at the scene he spoke with resident

Phillip Newman who related that appellant, a friend of his, was in his backyard removing property. As Gray walked around the corner to look in the backyard, he noticed a brown Cadillac parked on Rollingwood Drive. The registration had expired, the driver's window was down and the keys were in the ignition.

Appellant was approximately 150 feet east of the car walking down the middle of Rollingwood toward Gray when Gray noticed him. Gray testified that appellant appeared slightly agitated. Gray gestured towards the car and asked appellant if it belonged to him; appellant responded, "yes."

Sergeant Ford arrived as Gray was discussing Newman's complaint with appellant. After observing appellant for about two minutes Ford whispered to Gray that he was under the influence of drugs and told Gray to search the car. Appellant indicated he did not think the police could search his vehicle.

Gray found a canvas bag on the floorboard of the Cadillac. He could feel the "distinct outline" of a set of scales and as he touched them, appellant said, "oh, yeah, they're scales there but they're not mine." Opening the bag, Gray found several plastic bags containing a white powder substance, 10 syringes and some colored pills. Subsequent testing of the powder revealed three of the seized bags contained methamphetamine in 3.43-, 3.8- and 6.4-gram quantities. Another large bag contained a noncontrolled, vitamin-like substance.

Ford arrested appellant and transported him to a Richmond police station where officers conducted a search of his person. They found over $900 in one of two wallets recovered, segregated by denomination and into $100 amounts.

### (2) *January 27, 1988, Search*

Six days later Deputy Sheriff Daniel Terry and several other officers searched 1831 Manzanilla in San Pablo pursuant to a search warrant. Appellant was not there but his now ex-wife, Regina Dees, allowed the officers entry. She told the deputies that they were having marital problems and appellant "stayed there on and off."

In the master bedroom Daniels located a locked wood cabinet. Regina said the cabinet belonged to her husband and she was not allowed in it. Daniels forced it open, finding a .38-caliber pistol, some white powder and indicia in appellant's name. They also found bindles, coin bags, a scale, some pills, more powder in the garage, and a knife in a child's bedroom.

### (3) *Defense*

Regina Dees testified she told the deputies that appellant did not live at 1831 Manzanilla and they were separated at the time. He apparently moved out at the beginning of January. She did not give the officers the key to the cabinet. Regina Dees stated that the gun belonged to her. She also related that appellant owned several vehicles, but not a Cadillac.

Michael Piper testified he had known appellant for about two weeks. He saw him in the neighborhood on January 19; appellant was trying to jump start his truck with his little blue pickup. Piper never saw appellant driving or anywhere near a brown Cadillac.

### B. *Suppression Hearing*

At oral argument on the suppression motion, the parties argued the issue of "standing." Defense counsel insisted the prosecution established a "nexus" between appellant and the car through testimony that appellant said the car was his, and further urged that it could not under these circumstances argue both sides of the fence on the "standing" issue. The judge continued the matter to review the preliminary hearing transcript before pronouncing his ruling. A week later he denied the motion as follows: "I am going to with reluctance deny this motion. I think if there was standing, this motion would have to be granted. The out-of-court admission does not give the Defendant standing and I don't think there was any other sufficient proof of standing."

### II. DISCUSSION

Appellant contends the trial court based its ruling on two grounds, both of which he maintains were incorrect reasons for defeating his "standing" to bring the suppression motion: (1) the court deemed the police testimony about appellant's interest in the car to be inadmissible hearsay and (2) the court believed appellant was responsible for *producing* evidence of "standing." He further submits the People cannot argue the facts both ways to defeat his right to prosecute the suppression motion.

The People interpret the court's ruling as the result of judging witness credibility, weighing the evidence and resolving conflicts in the testimony. Regarded this way, they conclude "that the court viewed appellant's in-court position disavowing ownership as more compelling evidence regarding standing than his out-of-court statement to the contrary related by Officer Gray. Quite simply, by proffering testimony that he did not own the car, appellant failed to persuade the court that he had standing."

We do not agree with this interpretation. The statement that appellant's out-of-court admission does not give him standing means just that, in the court's opinion, appellant's statements at the scene could and did not factor into its determination of whether he had a reasonable expectation of privacy in the Cadillac. For the reasons set forth below we conclude the court erred in refusing to hear the merits of appellant's suppression motion and, accordingly, reverse and remand.

### A. *Admissibility*

■ To the extent the court may have concluded appellant's statements at the scene, as related by the officers, were inadmissible hearsay, it was wrong. First, appellant did not object to the statements. Second, Evidence Code section 1220 provides: "Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party . . . . " The prosecution offered the statements in question against appellant on the issue of guilt on the possession counts, i.e., he owned or possessed the Cadillac and its incriminating contents. These statements were admissible pursuant to Evidence Code section 1220.

### B. *Expectation of Privacy*

#### (1) *Case Law Summary; Effect of Disclaimer*

In *Rakas* v. *Illinois* (1978) 439 U.S. 128, 140 [58 L.Ed.2d 387, 399, 99 S.Ct. 421], the United States Supreme Court abandoned what it considered an artificial examination of defendant's "standing" to challenge the legality of a search in favor of focussing on substantive Fourth Amendment law and in particular the cornerstone principle that Fourth Amendment rights are personal in nature. (*Id.*, at pp. 139-140 [58 L.Ed. 2d at pp. 398-399].) "[T]he question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." (*Id.*, at p. 140 [58 L.Ed. 2d at p. 399].) The court went on to explain that the capacity to claim the protection of the Fourth Amendment depends on whether the claimant has a legitimate expectation of privacy in the invaded place. (*Id.*, at p. 143 [58 L.Ed. 2d at pp. 400-401].)

The high court has also stated that the defendant has the burden of proving he or she has a legitimate expectation of privacy in the area or item searched. (*Rawlings* v. *Kentucky* (1979) 448 U.S. 98, 104 [65 L.Ed.2d 633, 641, 100 S.Ct. 2556].) In *Rawlings* the court upheld the judgment of the

Supreme Court of Kentucky, wherein the state court looked to the "totality of the circumstances" to ascertain whether the defendant made a sufficient showing. As explained in *United States* v. *Hawkins* (11th Cir. 1982) 681 F.2d 1343, 1345, upon which respondent relies, when deciding whether a defendant has a sufficient expectation of privacy in the article at the time of the search, the reviewing courts must "view in totality the circumstances surrounding the event, including the preliminary statements of ownership asserted by [defendant] at the motion to suppress hearing."

It is significant that *Hawkins* involved the converse of this case: at the time of the warrantless search of a suitcase containing heroin, Hawkins vehemently denied ownership of the suitcase and any knowledge of the woman carrying it. (*United States* v. *Hawkins, supra,* 681 F.2d at p. 1344.) Then, contrary to his assertions at the scene, Hawkins tried to convince the court at his suppression hearing that he owned the suitcase and the heroin. The court held that Hawkins's affirmative disclaimer at the time of the search was so inconsistent with his later assertion of privacy as to defeat that claim. (*Id.,* at p. 1346.)

This court, citing *Hawkins,* has held that "a disclaimer of proprietary or possessory interest in the area searched or the evidence discovered terminates the legitimate expectation of privacy over such area or items." (*People* v. *Stanislawski* (1986) 180 Cal.App.3d 748, 757 [225 Cal.Rptr. 770].) There, officers discovered marijuana gardens near defendant's home while engaged in an aerial search. They obtained a warrant to search Stanislawski's residence, and also searched the adjoining hillside area belonging to his neighbor where they located a campsite with solar equipment, rodent traps and piping of the same kind found at his home. Stanislawski disclaimed any possessory or proprietary interest in the camp or the property seized. Nonetheless, he argued he had a privacy interest in the camp because he exercised joint control and supervision over it. However, no evidence was introduced that he did, in fact, exert such joint control. On these facts we concluded Stanislawski failed to carry his burden of establishing the requisite expectation of privacy to challenge the campsite search. (*Ibid.*)

*Hawkins* and *Stanislawski* were followed in the recent case of *People* v. *Dasilva* (1989) 207 Cal.App.3d 43 [254 Cal.Rptr. 563] wherein defendant Dasilva disavowed ownership of certain containers in the trunk of the car he was driving at the time of the warrantless search. He later moved to suppress the seized items; the reviewing court concluded that because he disclaimed possession, he could not take a contrary position at the suppression hearing to attain "standing."

These cases stand for the proposition that a total disclaimer of any interest in the area or item searched at the time of the search (*Hawkins, Dasilva*),

or the absence of *any* evidence of ownership, possession or control of such area or item (*Stanislawski*), will preclude a successful challenge to the legality of that search.[1] In the former situation, the defendant has in effect given the authorities the green light to proceed insofar as his or her own Fourth Amendment rights are concerned. In the latter, there is a total failure of proof. On the other hand, here the officers concluded the Cadillac belonged to appellant based on his own admission of ownership and protestation at the scene; they searched it without his consent and found incriminating evidence.

Obviously, it is inconsistent to assert a privacy interest in a car or other object at the time of the search and later seek to disassociate yourself from that object. But for a variety of reasons we do not think appellant's subsequent disassociation from the Cadillac is fatal to his effort to preserve his Fourth Amendment rights.

### (2) *Effect of Prosecutor's Evidence on Burden*

First, the court is charged with looking at all the circumstances to determine whether the defendant has a reasonable expectation of privacy in the place invaded, including statements made at the scene. And, while the defendant has the burden of persuasion on the issue of his or her privacy expectations, this burden can be met by the prosecution's evidence. In *United States* v. *Fernandez* (9th Cir. 1985) 772 F.2d 495 all testimony admissible as to the defendant tended to support his claim of a reasonable expectation of privacy in the suitcase searched and its contents. This testimony was based on hearsay and introduced by the government, but defense counsel did not object. The circuit court thus concluded the district court could consider the evidence for its probative value. Since there was no evidence indicating Fernandez lacked an expectation of privacy in the suitcase prior to his contact with the government officials, the court rejected the lower court's conclusion that he failed to demonstrate a Fourth Amendment interest.

### (3) *Prosecutorial Self-contradiction*

Second, although we are mindful that, unlike Fernandez, in this case appellant called witnesses at the preliminary hearing who testified he did

---

[1] The People also refer us to *United States* v. *Rickus* (E.D.Pa. 1972) 351 F.Supp. 1379, 1383, wherein the district court determined that the defendant's disclaimer at the motion to suppress negated any recognizable interest of privacy in the contents of the car. But again, there was no evidence that defendant ever asserted any interest in the car, at the time of the search or otherwise. The police apparently searched the car, unbeknownst to defendant and outside his presence, after his arrest.

not own or drive the car in question, we must also account for the inconsistent positions taken by the prosecution. Appellant contends the prosecution cannot argue ownership of the Cadillac and its contents as indicative of guilt while at the same time relying on his subsequent disavowal of ownership to defeat his Fourth Amendment interest. The People at all times have maintained they can simultaneously urge defendant does not have "standing" but assert he had possession of the items seized.

At the suppression hearing, the People relied on *United States* v. *Salvucci* (1980) 448 U.S. 83 [65 L.Ed.2d 619, 100 S.Ct. 2547] to support this position. In *Salvucci* the court abandoned its rule of "automatic standing" for defendants charged with crimes of possession as developed earlier in *Jones* v. *United States* (1960) 362 U.S. 257 [4 L.Ed.2d 697, 80 S.Ct. 725, 78 A.L.R.2d 233]. This rule provided that where possession of the seized evidence was an essential element of the charged offense, the defendant need not demonstrate that the search violated his or her own Fourth Amendment rights, but only that it was unconstitutional. The *Jones* court expanded the protective scope of the exclusionary rule beyond actual victims of illegal searches and seizures because of the unique circumstances confronting a defendant prosecuted for a possessory offense. First, there was the problem of self-incrimination that would follow any assertion of Fourth Amendment rights; second, there was the "vice of prosecutorial self-contradiction" wherein the government argued possession on the issue of guilt while simultaneously attempting to deny possession for purposes of the Fourth Amendment. (*Id.*, at p. 263 [4 L.Ed.2d at pp. 703-704].)

The court in *Salvucci* first explained that its decision in *Simmons* v. *United States* (1968) 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967] eliminated the self-incrimination problem by ruling that a defendant's testimony in support of a motion to suppress cannot be admitted as evidence of guilt at trial. (*United States* v. *Salvucci, supra*, 448 U.S. at p. 88 [65 L.Ed.2d at pp. 625-626].) Then, it reasoned that under substantive Fourth Amendment principles "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction." (*Id.*, at p. 90 [65 L.Ed.2d at p. 627].)

*Salvucci* does not, however, stand for the proposition that the government can always avoid "the vice of self-contradiction." The court was convinced that refinements in Fourth Amendment jurisprudence eliminated the need for the automatic standing doctrine, and that its only remaining function was to "afford a windfall to defendants whose Fourth Amendment rights have *not* been violated." (*United States* v. *Salvucci, supra*, 448 U.S. at p. 95 [65 L.Ed.2d at p. 630].)

As subsequently explained in *United States* v. *Issacs* (9th Cir. 1983) 708 F.2d 1365, *Salvucci* simply rejected automatic standing based on possession alone, where there was no expectation of privacy in the area searched. But where circumstances of a particular case make possession and denial of an expectation of privacy inconsistent, the court in *Issacs* concluded the government cannot have it both ways. There, secret service agents discovered six journals in a safe in a closet in Issacs' residence. One appeared to contain notations relating to drug transactions. Issacs' motion to suppress that journal was unsuccessful. At trial Issacs disclaimed ownership of the journals. On appeal the government challenged his "standing" to object to the search based on his trial strategy to deny ownership.

The reviewing court would not allow the government to have it both ways, reasoning that the government could not, and did not, dispute that Issacs had a legitimate expectation of privacy in the safe itself. "Issacs's denial of ownership should not defeat his legitimate expectation of privacy in the space invaded and thus his right to contest the lawfulness of the search when the government at trial calls upon the jury to reject that denial . . . . [¶] The government's concession that Issacs had 'a legitimate expectation of privacy in the invaded place,' [citation] precludes its contention that he had none in the items found there." (*United States* v. *Issacs, supra,* 708 F.2d at p. 1368.)

The People attempt to distinguish *Issacs* on the basis that in that case, the defense disclaimer occurred at trial rather than at the preliminary hearing. Unlike Issacs, they claim that appellant's denial was not a trial stratagem, and he could have testified the car was his without incriminating himself at trial. As a further difference, it appears that Issacs only disclaimed ownership of the journals, not the safe, the "place invaded."

We cannot quarrel with these differences, but they do not end our review. To clarify, there was no separate suppression hearing below. The suppression motion was submitted on the basis of the preliminary hearing transcript, the defense arguing "standing" at the oral hearing on the basis of appellant's statements to the officers prior to the search. ■ The posture of the suppression motion, decided on the basis of facts adduced at the preliminary hearing which the magistrate deemed sufficient to hold appellant to answer, points to a fundamental problem infecting the lower court's decision: the same facts which connected appellant to the crimes of possessing drugs and paraphernalia, and which the magistrate would have to accept to find sufficient cause to believe appellant was guilty of the offenses, were rejected by the lower court to prove standing. The *only* evidence at the preliminary hearing tying appellant to the contents of the Cadillac was the testimony of officers Gray and Ford that appellant admitted the car was his

and questioned their right to search it. The People did not introduce registration, a bill of sale, or other indicia of ownership at the preliminary hearing. Their unequivocal position was that the car and its contents belonged to appellant because he said so.

Given these circumstances, we conclude the People are estopped to argue that appellant did not carry his burden to prove standing. Stated differently, the People in effect conceded appellant's connection to the car and his expectation of privacy therein. (See *United States* v. *Issacs, supra,* 708 F.2d at p. 1368.) Moreover, the lower court, by holding appellant to answer on the basis of the People's evidence, thereby rejecting appellant's attempt to disassociate himself from the Cadillac, cannot then turn the tables to deny his assertion of privacy based on the exact same showing.

## C. *Disposition*

Appellant urges reversal only as to counts 1 and 2, possession for sale and unauthorized possession of hypodermic needle. These convictions rested entirely on evidence seized during the search of the Cadillac. He has a right to litigate the legality of that search. Considering the trial court's statement that it would grant the motion to suppress but for "standing" problems, as well as our own review of the circumstances surrounding appellant's arrest and the search, we conclude it is reasonably probable that the lower court will grant appellant's motion the second time around.

The judgment is reversed.

Poché, J., and Perley, J., concurred.