Filed 1/22/14  P. v. Patterson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>   v.<br><br>DINETTE EUGENE PATTERSON,<br><br>      Defendant and Appellant. | C072256<br><br>(Super. Ct. No. 12F03027) |

Defendant Dinette Patterson was convicted of being a felon in possession of a firearm.  During a traffic stop for a Vehicle Code violation, the police found a gun in his passenger's purse.  On appeal, defendant contends the trial court erred in denying his motion to suppress the evidence because:  (1) the People were estopped from arguing that he did not have "standing" to challenge the search of the purse; and (2) the search of the purse was not supported by probable cause.  We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 2012, Officer Mark Callaghan of the Sacramento Police Department was on patrol with Officer Scott Hall when they passed a vehicle driving with "dark window tinting in the . . . front windows." Because tinted front windows violate the Vehicle Code, Officer Callaghan stopped the vehicle.

In addition to the driver, the car contained a male passenger in the front seat and a female passenger in the backseat. After the driver verbally identified himself as Dinette Patterson (defendant), the officers returned to their patrol car to do a records check. The check showed defendant was on probation and was driving with a suspended license.

Both officers then reapproached the vehicle, Officer Callaghan on the driver's side and Officer Hall on the passenger's side. As Officer Hall "got near the . . . rear area of the passenger side [of the] car," he observed movement within the car. He saw defendant "lean a little bit towards his right" and "turn[] slightly" while the rear passenger "appeared to reach out with her right arm as to give or receive something." As the rear passenger's arm "came back," a gold colored purse was visible in her left hand. Officer Hall could not "tell what, if anything, was passed."

Meanwhile, or shortly thereafter, Officer Callaghan returned to the driver's side of the car and informed defendant they would be doing a probation search. Defendant said he was not on probation. Officer Callaghan stated, "we are going to do a probation search and you need to put your hands behind your head." Officer Callaghan saw defendant make "an eye movement towards the front passenger and then towards the back passenger [¶] . . . [¶] . . . almost like he was signaling or illustrating something." Defendant then put his hands behind his head. Officer Callaghan removed defendant from the car and placed him in handcuffs.

Officer Hall told both passengers to exit the vehicle. As the female passenger stepped out of the car, she picked up her purse. Officer Hall told her three times to set her purse down before she finally "left her purse and stepped out of the vehicle." When

2

Officer Hall asked if the purse belonged to her, she responded, "[W]ell, it's my purse." A subsequent search of the purse revealed a gun, "upside down" in the purse with a scarf bunched over it. No other contraband was found in the vehicle.[1]

Defendant was charged with being a felon in possession of a firearm and unlawfully carrying a loaded firearm in a public place.

Defendant moved to suppress evidence of the gun found in his passenger's purse. He argued (among other points) that the warrantless search conducted by the police was unjustified because he was not on probation at the time of the search.

The prosecutor argued defendant did not have a reasonable expectation of privacy in the passenger's purse because only the female passenger claimed ownership of the purse. The prosecutor further contended defendant had no subjective expectation of privacy in the purse because he "denied any interest in the property located inside [the passenger's] purse" and "purport[ed] to not know the contents of the purse."[2] The prosecutor also argued the search of the purse was lawful because it was supported by probable cause.

The trial court denied defendant's motion to suppress, finding that while "defendant was not actually on probation at the time of the search," "defendant had no reasonable expectation of privacy as to someone else's purse."[3] The court emphasized

---

[1] In a subsequent interview with another officer, the female passenger said that when the officers returned to their police car, defendant "reached into his front waist area and pulled out a dark colored firearm and gave it to her." She stated she "panicked, and she put it in her purse."

[2] According to the People's opposition to the motion to suppress brief, while sitting in the backseat of Officer Callaghan's patrol car, defendant stated, " 'I don't know where that gun came from. You just came back with that gun. It was that girl's gun.' "

[3] The issue of defendant's probation status in relation to the search of the car is irrelevant on appeal because defendant's argument is limited to the search of the passenger's purse.

that "the only person who has [a] reasonable expectation of privacy as to one's purse content is the owner of the purse and not someone else." In denying defendant's motion, the court also suggested the search of the purse was supported by probable cause.

Defendant subsequently pled no contest to the charge of being a felon in possession of a firearm. He was sentenced to 16 months in prison.

DISCUSSION

Defendant makes two arguments on appeal. First, he contends the People were estopped from arguing that he "lacked a reasonable privacy interest in the passenger's purse" while simultaneously charging him with possession of the gun found inside the purse. Second, he argues the search of the purse was not supported by probable cause. These are the only two arguments identified in defendant's opening brief and are the only ones we consider on appeal. To the extent defendant makes additional arguments in his reply brief, we do not consider them because they were not contained in his opening brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 766 ["We refuse to consider the issues raised by [the] defendant in his reply brief which were not raised in his opening brief"]; *People v. Mitchell* (1995) 36 Cal.App.4th 672, 674 fn. 1 [declining to consider arguments raised for the first time in the appellant's reply brief].)

Defendant contends that because he "was charged with possession of the gun found in the passenger's purse[,] the claim that [he] lacked a possessory interest in the purse sufficient to permit him to challenge the search . . . is contradictory." Thus, he contends "the prosecution should be estopped from arguing that [he] lacked a reasonable privacy interest in the passenger's purse." Defendant's argument is unpersuasive.

Relying on *People v. Dees* (1990) 221 Cal.App.3d 588, defendant contends "the prosecution is estopped from arguing that a defendant may not challenge the search, where the evidence tying a defendant to a crime is the same evidence that the prosecution

4

argues is insufficient to establish a reasonable expectation of privacy for Fourth Amendment purposes." *Dees*, however, is inapposite. "In *Dees*, the prosecution contended that a defendant's statement to police that he owned a Cadillac was evidence supporting his conviction for possession of the drugs the police found when they searched the car." (*People v. Dachino* (2003) 111 Cal.App.4th 1429, 1432 [summarizing *Dees*].) The sole evidence tying the defendant to the crime was his statement that he owned the car. (*Dees*, at pp. 597-598.) "When the defendant later denied he owned the car, the prosecution successfully argued to the trial court that because of that denial he lacked standing to challenge the search." (*Dachino*, at p. 1432.)

The Court of Appeal reversed and held that the People were "estopped" from arguing that the defendant did not carry his burden to prove standing to challenge the search. (*People v. Dees*, *supra*, 221 Cal.App.3d at p. 598.) Because the People's "unequivocal position was that the car and its contents belonged to [the defendant] because he said so," "the People in effect conceded [his] connection to the car and his expectation of privacy therein." (*Ibid*.) Thus, "the prosecution could not take the contradictory positions that his admission of ownership was evidence of his guilt and his subsequent disavowal of ownership defeated his Fourth Amendment interest." (*People v. Dachino*, *supra*, 111 Cal.App.4th at p. 1432 [summarizing *Dees*].)

Defendant's case is distinguishable from *Dees*. Whereas in *Dees* the fundamental inconsistency was the prosecution's contradictory argument that the defendant both owned the car and did not own the car, the People here make no such contradictory argument. Instead, the People have consistently contended defendant did not own the purse where the gun was found.

Furthermore, unlike in *Dees*, where ownership of the car was essential to proving the defendant was in possession of the drugs, the prosecution here had no need to prove,

and did not attempt to prove, that defendant owned the purse in which the gun was found. This is because ownership of the purse was not what tied defendant to the crime of possessing the gun. Thus, there is no inconsistency in the People's position that defendant possessed the gun but at the same time did not own or have a privacy interest in the purse where the gun was found.

*Dachino* is likewise unhelpful to defendant's argument. In *Dachino*, a police officer claimed the defendant said he had a gun in his waistband and the officer searched the defendant and found the gun. (*People v. Dachino*, *supra*, 111 Cal.App.4th at p. 1431.) The defendant claimed the officer planted the gun and that he actually never had one. (*Ibid*.) The prosecution argued that because the defendant testified the officer did not find the gun on him, no search occurred. (*Ibid.*) The trial court accepted the prosecutor's position: in denying the suppression motion, the court "reason[ed] that 'based on the testimony of the defendant . . . he lacks standing [to challenge the search].' " (*Id*. at pp. 1432, 1433.) Relying on *Dees*, the appellate court reversed, explaining that "the prosecution may not rely on [the defendant's] denial that he possessed the gun to defeat his Fourth Amendment interest." (*Dachino*, at p. 1433.)

Defendant's case is again distinguishable. In *Dachino*, the prosecution inconsistently asserted that the defendant possessed the gun (for purposes of the charge against him) and that he did not possess the gun (for purposes of the suppression motion). As discussed previously, there is no such inconsistency in the People's assertion here that defendant possessed the gun but did not own or exercise dominion and control over the purse in which it was found. *Dachino* also is inapposite.

Defendant next claims the facts of *United States v. Issacs* (1983) 708 F.2d 1365 are analogous to his case. We disagree. In *Issacs*, police found journals inside the defendant's safe and offered the journals as evidence of the defendant's guilt. (*Id*. at

pp. 1366-1367.)  The defendant claimed ownership of the safe itself but disclaimed ownership of the journals inside the safe.  (*Ibid*.)  Because the government conceded the defendant had a legitimate expectation of privacy in his safe, the court held the government could not rely on the defendant's disavowal of ownership of the journals to defeat his ability to challenge the search of the safe.  (*Id*. at p. 1368.)

Unlike in *Issacs*, the People here do not concede defendant had a legitimate expectation of privacy in the purse where the gun was found.  Moreover, language in *Issacs* specifically supports the People's argument in the instant case:  "The government may properly contend that a defendant owned drugs which, moments before the challenged search, he had placed in his girlfriend's purse, in which he had no legitimate expectation of privacy."  (*United States v. Issacs, supra*, at p. 1368 [citing *Rawlings v. Kentucky* (1980) 448 U.S. 98 [65 L.Ed.2d 633]].)  This is precisely what happened here except it was a gun in the purse.

Finally, defendant relies on *U.S. v. Singleton* (9th Cir. 1993) 987 F.2d 1444 for the proposition that the People may not " 'argue possession but deny expectation of privacy where the circumstances of the case make such positions necessarily inconsistent.' "  As discussed previously, the People's argument in this case is not inconsistent.  The People argue defendant possessed the gun but did not have a reasonable expectation of privacy in the purse where the gun was found.  As the *Singleton* court specifically recognized, even "a defendant in *legal* possession of an item does not necessarily have a legitimate expectation of privacy in the place from which the item is seized."  (*Id*. at p. 1447, italics added.)

In view of the above, there is no need to reach the second argument of whether the search of the purse was supported by probable cause.  Because he had no legitimate expectation of privacy in the passenger's purse, defendant had no right to challenge the search of the purse.  (See *People v. Hernandez* (1988) 199 Cal.App.3d 1182, 1190.)

7

DISPOSITION

The judgment is affirmed.

     ROBIE     , Acting P. J.

We concur:

     MAURO     , J.

     DUARTE     , J.