Filed 3/26/14  P. v. Lauri CA4/3
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAYSUN EDWARD LAURI and ANNALISA JOY LAURI,<br><br>  Defendants and Appellants. | G049100<br><br>(Super. Ct. Nos. FSB053697;<br>                   FSB054367;<br>                   FSB053658)<br><br>O P I N I O N |

Appeal from a judgment of the San Bernardino Superior Court, Donna G. Garza, Kyle S. Brodie, and J. David Mazurek, Judges.  Affirmed in part, reversed in part, and remanded.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant Jaysun Edward Lauri.

Laurel M. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant, Annalisa Joy Lauri.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William Wood and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　\*　　　\*

A jury convicted Jaysun Lauri of possession of marijuana (Health & Saf. Code, § 11357, subd. (e); count 2), felon in possession of a firearm (Pen. Code, former § 12021, subd. (a)(1); counts 7 and 13; all statutory references are to the Penal Code unless noted), possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 9), possession of methamphetamine (Health & Saf. Code, § 11378; counts 10 and 14), child endangerment (§ 273a, subd. (a)); counts 11 and 12), and transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 15).[1] As to certain counts, the jury found Jaysun was personally armed with a firearm (§ 12022, subd. (c)), and found he had suffered four prior drug convictions (Health & Saf. Code, § 11370.2, subd. (c)). The jury convicted Annalisa of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 9), possession of methamphetamine (Health & Saf. Code, § 11378; count 10), and child endangerment (§ 273a, subd. (a); counts 11 and 12).

Defendants seek review of a sealed search warrant affidavit and in camera proceedings to ascertain whether the trial court erred in denying a motion to traverse and quash the search warrant, and unseal the affidavit. (See *People v. Hobbs* (1994) 7 Cal.4th 948 (*Hobbs*).) They also assert the trial court erred in applying the good faith exception to the warrant requirement. (*United States v. Leon* (1984) 468 U.S. 897, 922-923.) Finally, Jaysun argues the court erred in denying his motion to suppress evidence found

---

[1] To avoid confusion and for the reader's convenience, we refer to the defendants and appellants by their first names. We do not intend this informality to reflect a lack of respect. (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn.2)

in a briefcase during a vehicle stop. Annalisa also challenges several probation conditions as unconstitutionally vague and overbroad.

After we filed our original opinion, Jaysun petitioned for rehearing seeking reversal of his conviction for transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 15) and associated enhancements (Health & Saf. Code, § 11370.2, subd. (c)) based on an amendment to Health and Saf. Code, § 11379 that took effect Jan. 1, 2014 (Assem. Bill No. 721 (2013-2014 Reg. Sess.) ch. 504). The amendment redefines "'transport[]'" of a controlled substance to mean "transport for sale." We granted rehearing and invited the parties to submit supplemental briefs addressing the issue. The Attorney General concedes the amendment applies retroactively to Jaysun (*In re Estrada* (1965) 63 Cal.2d 740) and requires reversal of count 15 and its associated enhancements.

For reasons expressed below, we modify the terms and conditions of Annalisa's probation. As to Jaysun, we reverse his conviction for transportation of methamphetamine and associated enhancements and remand for Jaysun's resentencing.

I

FACTS AND PROCEDURAL BACKGROUND

On the afternoon of November 8, 2005, deputies with the San Bernardino sheriff's department executed a search warrant at 760 Audio, Jaysun's Victorville business. Jaysun ran into his office when he spotted the deputies and barricaded the door. Deputies eventually gained entry, searched the office, and found in Jaysun's desk a bag containing 43 grams of methamphetamine, small baggies, a scale, and a shotgun. Deputies also discovered at the business a rifle, a pot or vase with a false compartment, a toolbox containing a handgun, pay-owe sheets, a methamphetamine pipe, and ammunition. Jaysun had a bindle containing 4.3 grams of methamphetamine in his back pocket.

3

Around 8:00 p.m. that evening, deputies executed a search warrant at the Lauris' San Bernardino home. In the master bedroom closet, the officers found a rifle with a sawed-off barrel and a shotgun, and another shotgun with a sawed-off barrel under the bed. They also found plastic bags containing marijuana remnants in the master bedroom, and baggies containing 22 grams and 12 grams, respectively, of marijuana in a dresser in the northeast bedroom. A purse in the living room contained two additional baggies of marijuana.

Deputies returned to the Lauris' residence on the evening of December 14, 2005, to execute another search warrant. They found the Lauris at home with their two young sons, ages five, and eight months. The residence was dirty and disorganized. Deputies found an unsheathed machete on a dresser in the master bedroom. At various locations throughout the house, deputies discovered two baggies of marijuana, a marijuana grinder, items and substances that could be used in the manufacture and sale of methamphetamine, a scale, and a casserole dish dusted with a white powdery substance later determined to be methamphetamine. On hallway shelves outside the bathroom, accessible to a child, deputies located a Band-Aid box containing marijuana paraphernalia and small plastic baggies, a loaded handgun, and gas masks. Deputies also found a BB gun rifle in the baby's crib. In a Dodge Viper automobile, deputies found methamphetamine, a pipe, and a loaded handgun.

Jaysun told deputies he used methamphetamine every morning, and the Lauris admitted they kept the guns for their own protection. Annalisa denied using methamphetamine, but admitted using marijuana and OxyContin. Both tested positive for amphetamines, and Annalisa tested positive for marijuana metabolites. A urine test of their five-year old son was positive for methamphetamine and amphetamine.

On December 26, 2005, deputies stopped a silver Chevrolet for traffic violations. Jaysun, the rear seat passenger, straddled a briefcase on the floorboard. Attorney Don Ferguson's business card was attached to the briefcase, which contained 15

grams of methamphetamine in a large bag, and smaller bags contained lesser amounts of the drug. A scale in the briefcase had an "L" etched into it. The briefcase also contained a photograph of Jaysun and his business card. Jaysun had $249 on his person, and deputies also found two drug pipes. Ferguson denied responsibility for the contents of the briefcase, although in May 2007, he suffered a conviction for possession of methamphetamine for sale.

Jaysun had previously suffered convictions in Orange County for transportation and possession for sale of controlled substances in 1993 and 1994. Defendants testified and presented evidence suggesting others may have possessed the rifle found at the business. They also denied that Jaysun was a drug dealer, claiming the couple possessed the drugs found in their possession for personal use.

II

DISCUSSION

A.  *The Trial Court Did Not Err in Denying Motions to Unseal Confidential Portions of the November 8, 2005 Search Warrant Affidavit, to Traverse the Warrant, and to Quash the Warrant*

Jaysun asks this court to conduct an independent review of the sealed probable cause affidavit related to search warrant VVSW05-530. Law enforcement relied on this warrant to search Jaysun's Victorville business, 760 Audio, on November 8, 2005. Jaysun asks this court to determine whether the affidavit was properly sealed, whether it contains material misrepresentations or omissions, and whether it establishes probable cause for issuance of the warrant. The trial court addressed these issues during an in camera hearing outside the presence of the defense on May 3, 2010.

All or part of a search warrant affidavit may be sealed if necessary to protect the identity of an informant who has provided probable cause for the issuance of the warrant. (*Hobbs, supra,* (1994) 7 Cal.4th 948.) In such cases, where the defendant moves to traverse or quash the warrant, the trial court is required to conduct an in camera

5

hearing. (*Id.* at p. 972.) The court must determine whether sufficient grounds exist to maintain the confidentiality of the informant's identity, and whether the extent of the sealing is necessary to protect the informant's identity. (*Ibid.*) Absent a waiver from the prosecutor, the defendant or his attorney may not attend the in camera hearing. (*Id.* at p. 973.)

If the trial court determines all or part of the affidavit was properly sealed, it must next decide if there is any merit to the defendant's motion to traverse. (*Hobbs, supra,* 7 Cal.4th at p. 974.) The court must determine whether the affidavit included a false statement made knowingly and intentionally or with reckless disregard of the truth, and whether the false statement is necessary to a finding of probable cause. (*Ibid.*) The trial court must make this determination based on the public and sealed portions of the affidavit and any testimony offered at the in camera hearing. (*Ibid.*) The court must deny the traversal motion if it lacks merit, but if there is a reasonable probability the defendant will prevail on the motion, the prosecutor must be given the option of disclosing the sealed materials, or suffering the entry of an adverse order. (*Id.* at pp. 974-975.)

If the defendant moves to quash the warrant, the procedure is similar. The trial court must determine whether under the totality of the circumstances the affidavit and related materials furnished probable cause for the issuance of the warrant. (*Hobbs, supra,* 7 Cal.4th at p. 975.) The court must deny the motion to quash if the affidavit in support of the warrant demonstrates probable cause to issue the warrant, but if the court determines the defendant has a reasonable probability of quashing the warrant, the prosecutor must disclose the sealed materials to the defense to avoid having the warrant quashed. (*Ibid.*)

The trial court here followed the proper procedure. Our independent review of the record, including the sealed portions, confirms the trial court's determinations. We agree with the trial court sufficient grounds existed to maintain the confidentiality of the informant's identity, and the extent of the sealing was necessary for

that purpose. We also agree there is no reasonable probability that Jaysun could prevail on his motions to traverse and to quash the warrant.[2] Because the initial warrant was not defective, the subsequent search warrant obtained to search the Lauris' home on November 8, 2005, was not invalid for that reason.

B. *The Record Does Not Reflect Jaysun Moved to Quash the Warrant Used to Search 760 Audio on December 14, 2005*

Jaysun contends he filed a motion to suppress evidence found when officers executed a search warrant at 760 Audio on December 14, 2005. The parties do not describe what evidence from the search of 760 Audio on December 14, 2005, the court admitted at trial. A search warrant receipt lists only "paper work" as the "items taken" during the search. We have reviewed the page numbers of the clerk's transcript Jaysun cites to support his claim, but those pages refer to his motion to suppress evidence obtained without a warrant during the December 26, 2005vehicle stop. The record does not support Jaysun's claim he moved to quash the warrant used to search 760 Audio on December 14, 2005. Although the court purported to "find probable cause to search the business," the record does not contain a motion to quash the warrant. Consequently, Jaysun has forfeited his claim the affidavit for the search of 760 Audio on December 14, 2005, did not establish probable cause to search.

---

[2] Our original record did not contain affiant California Highway Patrol Detective Heath Kuhlmann's unredacted affidavit, which was used to obtain the warrant to search Jaysun's business on November 8, 2005. The trial court reviewed and declined to unseal that affidavit at an in camera review on May 3, 2010. The San Bernardino County Superior Court subsequently advised this court Kuhlmann's original affidavit could not be located. In an order filed December 18, 2013, we directed the San Bernardino Superior to conduct a hearing to obtain the original affidavit, or to authenticate and certify a copy of the affidavit the court considered on May 3, 2010. A minute order dated January 6, 2014, reflects the trial court conducted a hearing and authenticated "an accurate copy of the original affidavit considered by the trial court at the in camera proceeding on May 3, 2010." We have reviewed the authenticated copy of Kuhlmann's unredacted affidavit.

In any event, the affidavit supplied by San Bernardino Deputy Sheriff Eric Mello in support of the December 14, 2005 search of 760 Audio cited the drug and other evidence discovered at 760 Audio and the Lauris' home on November 8, 2005.[3] The affidavit also included information that a Detective Doug Wolfe of the "Sheriff's Intel Division" had eavesdropped on a December 13, 2005 phone call between a high security jailed Aryan Brotherhood gang member named Joseph Hayes and a person identified as Sackett. In the phone call, Hayes advised Sackett that Jaysun sold drugs from 760 Audio. Hayes provided an address and described Jaysun's car, a black Dodge Viper. Hayes stated another "guy in the business [] packed" a gun and told Sackett there was a false floor under a television stand. Hayes also stated there was a "rumor that Lauri had a large stash at his residence." Hayes suggested Sackett follow Jaysun home from 760 Audio, "jump" Jaysun and torture him until he disclosed where he kept his stash. Based on the discovery of methamphetamine and weapons at 760 Audio on November 8, 2005, and Hayes's assertion on December 13 that Jaysun was dealing drugs from 760 Audio, we agree with the court there was sufficient probable cause to search 760 Audio on December 14, 2005.

C.    *The Trial Court Did Not Err in Denying Annalisa's Motion to Suppress Evidence Found in the Search of the Lauris' Home on December 14, 2005*

Annalisa moved to quash the warrant authorizing the search of the Lauris' San Bernardino home (SBSW05-0797) on December 14, 2005, and to suppress evidence uncovered during the search. Jaysun joined in Annalisa's motion. On July 29, 2010, the

---

[3]    On May 4, 2010, the trial court granted a defense motion to unseal Mello's affidavits. The court had earlier denied a motion to unseal these affidavits on April 12, 2006. In his opening brief, Jaysun incorrectly asserts the April 2006 sealing order related to the November 8, 2005 affidavits.

8

court granted the motion to quash, finding the affidavit lacked probable cause. But on August 6, 2010, the court denied a motion to suppress evidence seized from the Lauris' home, finding the good faith exception to the warrant requirement applied.

Deputy Mello supplied an identical affidavit, described in the section above, to obtain the residential warrant. Mello testified at the suppression hearing on August 6, 2010, he had been a sworn officer for 14 years, and he had conducted numerous narcotics investigations during his four years as a narcotics detective. Mello stated drug dealers keep the drugs in more than one location to prevent "anybody from ripping them off." Mello explained Hayes was a high-ranking member of the Ayran prison gang, Hayes's information was consistent with the discovery of drugs and weapons at Jaysun's business and home on November 8, 2005, drug dealers often continue to deal even after an arrest, and Mello believed the warrant affidavit provided probable cause to search. The trial court found it was not "unreasonable for [the officers] to rely on the granting of the warrant" and denied the suppression motion.

In *United States v. Leon, supra,* 468 U.S. 897 (*Leon*), the court held the Fourth Amendment exclusionary rule does not "'bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.'" (*People v. Camarella* (1991) 54 Cal.3d 592, 596 (*Camarella*).) "'[A] warrant issued by a magistrate normally suffices to establish'" an officer's good faith belief. (*Leon, supra,* 468 U.S. at p. 922.) In some circumstances, however, the officer will have no reasonable grounds for relying on the magistrate. (*Id.* at pp. 922-923.) Review is limited to an objective examination of whether a "'reasonably well trained officer would have *known* that the search was illegal despite the magistrate's authorization.'" (*Camarella, supra,* 54 Cal.3d at pp. 602-603.) *Leon* noted four situations in which the good faith exception to the exclusionary rule would not apply: (1) where the affiant misled the magistrate with information the affiant knew was false or

would have known but for the affiant's reckless disregard; (2) where the magistrate wholly abandoned his judicial role; (3) where the affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'"; or (4) where the warrant itself is facially deficient in particularizing the place and items to be searched. (*Leon, supra,* 468 U.S. at p. 923.) In *Camarella,* the court held that the relevant inquiry for the good faith exception is not whether further investigation would have been reasonable, but whether a reasonable officer would have known that the affidavit in support of the search warrant was legally insufficient, and that he should not have applied for the warrant. (*Camarella, supra,* 54 Cal.3d at p. 606.)

Here, defendants argue the *Leon* exception does not apply because the affidavit's lack of probable cause rendered official belief in its existence entirely unreasonable. Based on the methamphetamine, scales, baggies and weapons found at 760 Audio on November 8, 2005, and the marijuana and weapons found at the Lauris' home the same evening, Hayes's information on December 13, 2005, that Jaysun was dealing drugs, and Mello's experience that dealers hide drugs at more than one location and often continue to deal in drugs after an arrest, we cannot say the affidavit's lack of probable cause rendered official belief in its existence as entirely unreasonable. If anything, the affidavit supports a probable cause finding. The trial court did not err in relying on *Leon* to deny the suppression motion.

D.    *The Trial Court Did Not Err in Denying Jaysun's Motion to Suppress Evidence Obtained from Search of the Briefcase on December 26, 2005*

On April 12, 2010, Jaysun moved to suppress evidence obtained from the search of the briefcase found during the vehicle stop on the evening of December 26, 2005. Jaysun was a passenger in a Chevrolet driven by Michael Caywood. San Bernardino deputies stopped the car for speeding. Caywood made erratic movements

10

inside the vehicle before stopping, and told the investigating officers his license had been suspended. After confirming the license suspension, the officers decided to impound the vehicle (Veh. Code, § 22651, subd. (p)), directed the occupants out, and began an inventory search. An officer opened the briefcase, which had been on the floorboard between Jaysun's legs, and discovered methamphetamine and a scale. Lauri claimed the briefcase belonged to his attorney, Don Ferguson.

Jaysun moved to suppress the evidence found in the briefcase. Although Jaysun's trial counsel claimed the "briefcase belonged to [] Lauri's attorney," he argued Jaysun had a possessory interest in suppressing the contents of the briefcase because the prosecution established standing by charging Lauri with possession of the drugs found inside the attaché. The trial court found Jaysun's disclaimer of ownership at the time of the search defeated his legitimate expectation of privacy in the briefcase's contents. On appeal Jaysun argues he "possessed the briefcase; he had the right to exclude others; he expected it would be free from governmental invasion; and he took normal precautions to keep the briefcase private, sitting between his legs in the car."

The Supreme Court in *Rakas v. Illinois* (1978) 439 U.S. 128, 140, examined the requirement a defendant show standing to claim a Fourth Amendment violation, The Court explained, "the question is whether the challenged search and seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." (*Id.* at p. 140.) This depends on whether the claimant has a legitimate expectation of privacy in the invaded place. (*Id.* at p. 143.) Defendant has the burden of proving he or she has a legitimate expectation of privacy in the area or item searched. (*Rawlings v. Kentucky* (1980) 448 U.S. 98, 104.) The court looks to the totality of the circumstances to ascertain whether the defendant made a sufficient showing. When deciding whether a defendant has a sufficient

11

expectation of privacy in the article at the time of the search, the reviewing court will consider the preliminary statements of ownership asserted by the defendant.

In *United States v. Hawkins* (11th Cir. 1982) 681 F.2d 1343, 1344-1345, the defendant denied ownership of a suitcase and any knowledge of the woman carrying it just before law enforcement officials opened it and found heroin. (*Ibid.*) At the suppression hearing, however, the defendant asserted he owned the suitcase and the heroin. The appellate court held defendant's affirmative disclaimer at the time of the search defeated his Fourth Amendment claim. (*Id.* at p. 1346; see *People v. Dasilva* (1989) 207 Cal.App.3d 43 [the defendant lacked standing to suppress evidence because he disavowed ownership of containers in the trunk of the car he was driving at the time of the warrantless search]; *People v. Stanislawski* (1986) 180 Cal.App.3d 748, 757 [defendant lacked standing to suppress evidence because he denied having a possessory or proprietary interest in the property seized].)

Based on the foregoing authorities, we conclude Jaysun lacks standing to challenge the search of the briefcase because he denied having a possessory interest in it at the time of the search. Jaysun "ha[d] in effect given the authorities the green light to proceed insofar as his [] own Fourth Amendment rights are concerned." (*People v. Dees* (1990) 221 Cal.App.3d 588, 595; see also *United States v. Salvucci* (1980) 448 U.S. 83, 88, 90 [court abandoned rule of "automatic standing" for defendants charged with crimes of possession; under substantive Fourth Amendment principles "a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction."].)

E.     *Annalisa's Probation Conditions*

The trial court suspended execution of a five-year, four-month prison term and placed Annalisa on probation under various terms and conditions, including service of a 365-day jail term. She complains several of the other probation conditions are vague or overbroad.

12

Section 1203.1, subdivision (a), authorizes the court to place a defendant on probation "upon those terms and conditions as it shall determine." The discretion to determine proper terms and conditions has limits, however. (*People v. Garcia* (1993) 19 Cal.App.4th 97, 101.) "[A] condition of probation which requires or forbids conduct which is not itself criminal is valid if that conduct is reasonably related to the crime of which the defendant was convicted or to future criminality." (*People v. Lent* (1975) 15 Cal.3d 481, 486.) "[E]ven if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality. [Citation.]" (*People v. Olguin* (2008) 45 Cal.4th 375, 380.)[4]

Trial courts must fashion precise probation conditions so the probationer knows what is required. (*Sheena K., supra,* 40 Cal.4th at p. 890.) A condition is invalid if it is " ' " 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.' " ' " (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1128 (*Quiroz*).) Nor may a court impose overbroad probation conditions. Where a condition impinges on a constitutional right, it must be carefully tailored and reasonably related to the compelling state interest in reformation and rehabilitation. (*Quiroz, supra,* at p. 1128; *Sheena K., supra,* 40 Cal.4th at p. 890.) A "court may leave to the discretion

---

[4] Annalisa did not object to the probation conditions imposed at the sentencing hearing. The forfeiture rule bars a defendant from raising an appellate challenge to a probation condition when the defendant failed to object on that ground in the trial court. (*People v. Welch* (1993) 5 Cal.4th 228, 234-238; see *In re Sheena K.* (2007) 40 Cal.4th 875, 882 (*Sheena K.*) ["an adult probationer who elects to receive probation in lieu of incarceration fairly may be charged with the need to timely challenge any conditions imposed and that application of the forfeiture doctrine would deter the promulgation of invalid conditions in the trial court and decrease the number of appeals contesting such conditions"].) But a defendant may raise on appeal, without having objected in the trial court, an appellate claim amounting to a "'facial challenge'" based on a constitutional defect that does not require scrutiny of individual facts and circumstances. (*Id.* at p. 885.)

13

of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation.  However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 [probation condition forbidding defendant from associating with all persons designated by his probation officer was "overbroad and permit[ted] an unconstitutional infringement on defendant's right of association"].)

Probation condition No. 8 requires Annalisa to "Keep the probation officer informed of place of residence and cohabitants and give written notice to the probation officer . . . (24) hours prior to any changes.  Prior to any move provide written authorization to the Post Office to forward mail to the new address."  Annalisa suggests the condition is vague because she should not "be required to give 24 hours notice of something if she does not know it is about to happen."  She also states the condition "appears overly broad in that it would . . . prohibit any move to a new residence – a constitutionally guaranteed right of travel – until she has an opportunity to inform her probation officer and then wait 24 hours."  The Attorney General responds, "[i]t is unlikely that a probationer would not be aware that she was changing residences within 24 hours of such a change" and "a probation condition should not be interpreted to presume a probation officer would act irrationally or capriciously."  But the Attorney General does not oppose Annalisa's proposed modification.  Accordingly, we modify the condition as follows:  Annalisa must "Keep the probation officer informed of her place of residence and cohabitants and give written notice to the probation officer twenty-four (24) hours before any move or change in cohabitants, or as soon as she reasonably becomes aware of a move or change, but no later than 24 hours after the move or change. Before any move provide written authorization to the Post Office to forward mail to the new address."

Probation condition No. 9 provides Annalisa must,  "Permit visits and searches of places of residence by agents of the Probation Dept. and/or law enforcement

14

for the purpose of ensuring compliance with the terms and conditions of probation; not to do anything to interfere with this requirement, or deter officers from fulfilling this requirement, such as erecting any locked fences/gates that would deny access to probation officers, or have any animals on the premises that would reasonably deter, threaten the safety of, or interfere with, officers enforcing this term." Annalisa contends the condition is vague and should be modified to prohibit her from *knowingly* deterring or interfering with probation or police officers. She explains, "Without knowing she was doing so, [she] could inadvertently do something that deters officers from visiting and searching her" residence "such as locking doors when she leaves . . . or locking a gate for her own or her family's safety. It is virtually impossible to know what *might* deter a given officer." She also complains that restriction on animals is vague because an "officer might be terrified of any dog [or other animal], regardless of size or temperament" and the restriction impinges on her right to own property. The Attorney General responds "rather than a knowledge requirement, . . . [m]odifying this condition to add a willful[ness] requirement would provide adequate specificity without requiring the probation condition to list every potential problematic circumstance, an impossible task." The Attorney General's suggested modification, however, is implicit in all probation cases because a court generally cannot find a defendant violated a probation condition without determining the violation was willful. (*People v. Galvan* (2007) 155 Cal.App.4th 978, 983.)

"Proper supervision includes the ability to make unscheduled visits and to conduct unannounced searches of the probationer's residence. Probation officer safety during these visits and searches is essential to the effective supervision of the probationer and thus assists in preventing future criminality." (*People v. Olguin* (2008) 45 Cal.4th 375, 381 (*Olguin*).) This is especially true where the defendant's underlying offense was possession of controlled substances. Officers must have ready access to the probationer's residence to verify the probationer's compliance and prevent the disposal of illegal

15

substances. Of course, locked gates and fences, and potentially dangerous animals create unreasonable obstacles to monitoring probationers. (*Id.* at p. 381 ["[a]nimals can be unpredictable and potentially dangerous when faced with a stranger in their territory, and some pose a great or even life-threatening hazard to persons in these circumstances"].)

Here, the condition does *not* prohibit Annalisa from locking her doors. It only prohibits locked *fences and gates*, impediments beyond the house that might delay access to the residence. Annalisa's legitimate interests in security and in owning animals can be balanced with the probation officer's interests in ensuring she complies with the terms of her probation. We therefore will modify the condition to require Annalisa to notify the probation officer of any animals at her residence, and to comply with the probation officer's reasonable requests concerning animals. (*Id.* at p. 381 [condition requiring probationer to notify probation officer of the presence of pets is reasonably related to future criminality].) Annalisa also must notify the probation officer of any locked gates and fences, and provide the probation officer with the means to access her residence without having her unlock a gate or fence (for example, by supplying the officer with a key to the gate or fence). We modify probation condition No. 9 as follows: "Permit visits and searches of places of residence by Probation Department or law enforcement agents to ensure compliance with the terms and conditions of probation; probationer shall notify the probation officer of any animals at her residence, and comply with the probation officer's reasonable requests concerning animals; probationer shall notify the probation officer of any locked gates and fences, and provide the probation officer with the means to access probationer's residence without having probationer unlock a gate or fence (for example, by supplying the probation officer with a key to the gate or fence)."

Probation condition No. 10 provides Annalisa must "[n]either possess nor have under [her] control any dangerous or deadly weapons or explosive devices or materials to make explosive devices." She complains the phrase "dangerous or deadly

weapon" can include common items, like kitchen knives or screwdrivers that are used to inflict serious injury on another. She also complains the condition is vague because it does not require possession to be personal and knowing. The Attorney General agrees the phrase is overbroad and suggests modifying the condition to prohibit possession of firearms and items *designed for use* as a weapon. We agree. Accordingly, we modify probation condition No. 10 as follows: "Neither possess nor have under your control any firearm or item designed for use as a weapon."

We also agree with the Attorney General an express knowledge requirement is unnecessary because knowledge is an implicit element in the concept of possession. (*People v. Kim* (2011) 193 Cal.App.4th 836, 846.) This also applies to Annalisa's complaint concerning probation condition No. 12, which provides "Neither use nor possess any controlled substance without medical prescription. A physician's written notice is to be given to the probation officer."

Condition No. 14 provides, "Not possess any type of drug paraphernalia, as defined in" Health and Safety Code section 11364.5, subdivision (d). In addition to complaining about the absence of a knowledge requirement, Annalisa argues section 11364.5 prohibits "possessing a significant number of items that have both drug-related and common uses." The Attorney General responds "it appears that the reference to the statute's list of items of drug paraphernalia is the best that can be done to describe the items appellant is prohibited from possessing" and the court "should assume that the probation officer and trial court in the case of a revocation hearing would review the context and circumstances of the possession of any item believed to be drug paraphernalia so as not to punish [her] for the possession of items unrelated to the use of illegal drugs." We note the statute qualifies the various items listed with the phrase "intended for use or designed for use" in various processes associated with illicit drugs. Thus, possession of "[b]lenders, bowls, containers, spoons, and mixing devices" are not prohibited unless the devices are "intended for use or designed for use in compounding

17

controlled substances." (Health & Saf. Code, § 11364.5, subd. (d).) Annalisa would not violate the condition unless she possessed a specified item designed for use with controlled substances, or that she intended to use for that purpose. But the condition is overbroad to the extent it prohibits possession of devices used with medically prescribed controlled substances. There is no rehabilitative interest in preventing a defendant from using instruments necessary for taking prescription medication. We hereby modify condition No. 14 to read: "Not possess any type of drug paraphernalia, as defined in Health & Safety Code section 11364.5, subdivision (d), except for any item used to administer a medication defendant was medically prescribed."

Condition No. 15 provides, "Neither possess nor consume any alcoholic beverages nor enter places where such beverages are the chief item of sale, and submit to tests at the direction of the probation officer." She complains she could be violated for "constructive possession of alcoholic beverages not known to her. She could also be violated for consuming beverages – a holiday punch, for example – that, unknown to her, contained alcohol." As noted above, possession requires knowledge, and probation violations must be willful. But the Attorney General agrees condition No. 15 should be modified to prohibit "knowing entry into any place for the purpose of consuming alcohol." We hereby modify condition No. 15 to provide: "Neither possess nor consume any alcoholic beverages nor knowingly enter a place for the purpose of consuming alcohol."

Finally, condition No. 18 provides, "Not associate with persons known to defendant to be convicted felons or anyone actively engaged in criminal activity, or the co-defendants (except those involved in recovery)." Annalisa contends the condition is overbroad because it prohibits her from associating with codefendant Jaysun, a convicted felon, who is her husband and the father of their children (who have since been adopted by her mother-in-law). The Attorney General agrees "the condition should be modified to exclude association with Jaysun Lauri as part of the prohibited conduct." We hereby

18

modify condition No. 18 to provide: "Not associate with persons known to defendant to be convicted felons or anyone actively engaged in criminal activity, except Jaysun Lauri."

F.    *Substantial Evidence Does Not Support Jaysun's Conviction for Transportation of Methamphetamine*

As noted above, on December 26, 2005, police stopped a car and found methamphetamine in a briefcase Jaysun straddled between his legs while a passenger in the rear seat. The jury convicted Jaysun of possession of the methamphetamine (Health & Saf. Code, § 11377; count 14) as a lesser included offense of possession for sale (Health & Saf. Code, § 11378). The jury also convicted Jaysun of transportation of methamphetamine (Health & Saf. Code, § 11379; count 15). The jury expressly found he "[t]ransported [the] methamphetamine for the purposes of personal use."

Section 11379 provides in relevant part, "every person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any controlled substance [including methamphetamine] . . . shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code for a period of two, three, or four years." Courts have upheld convictions for transportation of controlled substances "whether or not the evidence disclosed that the contraband was intended for sale or distribution." (*People v. Rogers* (1971) 5 Cal.3d 129, 135.) But effective January 1, 2014, the Legislature added subdivision (c) to section 11379, which provides, "For purposes of this section, 'transports' means to transport for sale."

The Attorney General concedes the amended statute applies in this case and requires reversal of Jaysun's conviction for transportation of methamphetamine and the associated enhancements. (*People v. Rossi* (1976) 18 Cal.3d 295, 299-302 [defendant entitled to benefit of change in law that decriminalizes acts forming the basis of his

19

conviction]; *In re Estrada*, *supra*, 63 Cal.2d 740 [when the Legislature acts to lessen punishment for a crime it is inferred in the absence of evidence to the contrary the Legislature intended the new statute to apply to all nonfinal cases].) Here, the jury expressly found Jaysun transported methamphetamine as charged in count 15 for personal use. Consequently, we must reverse Count 15 and the section 11370.2, subdivision (c) enhancements attached to that count must be reversed and remand for resentencing. (See *People v. Navarro* (2007) 40 Cal.4th 668 [remand for a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances]; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 ["upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed"].)

### III

#### DISPOSITION

Annalisa's probation conditions are modified (§ 1260) as indicated above. The trial court is directed to prepare an amended sentencing minute order incorporating the modifications and to provide a copy to the parties and the San Bernardino probation department. Jaysun's conviction under Health and Safety Code section 11379, subdivision (a) as charged in count 15 of the second amended information is reversed, as are the Health and Safety Code section 11370.2, subdivision (c) enhancements associated with count 15. The matter is remanded to the trial court, which is directed to resentence Jaysun. In all other respects, the judgment is affirmed.

20

ARONSON, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.